```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION


United States of America,       :

        Plaintiff,              :

   v.                           :       Case No. 2:11-cv-383

                                :       JUDGE JAMES L. GRAHAM
Buckingham Coal Company,                Magistrate Judge Kemp
et al.,                         :

        Defendants.             :
```

OPINION AND ORDER

This case is before the Court to resolve an issue about whether defendants need discovery in order properly to respond to the United States' motion for partial summary judgment. Defendants' joint Rule 56(d) motion is fully briefed. For the following reasons, the Court will permit some limited amount of discovery to proceed before defendants are required to file their memorandum in opposition to summary judgment.

I.

Fed.R.Civ.P. 56(d) provides a mechanism to deal with motions for summary judgment which are filed prior to the close of discovery. Often, such motions rely on assertions of fact which the opposing parties either believe to be in dispute, or which they are not in a position to stipulate to due to lack of discovery. When that occurs, and when the discovery necessary to explore those facts will not be completed by the time a response to the motion is due, the Court has the option either of denying the motion or allowing the opposing party or parties "time to obtain affidavits or declarations or to take discovery ...." Fed.R.Civ.P. 56(d)(2). Of course, the party asking for time to develop the facts more fully must support the motion with an affidavit or declaration, and the motion must be sufficiently

specific about the need for more time and more discovery.  Id.

There is a substantial amount of judicial gloss on this rule (which was formerly Rule 56(f); it was re-lettered as part of the 2010 amendments to the Federal Rules of Civil Procedure).  First, of course, because the rule uses the word "may" to describe the options open to the District Court, the decision whether to grant relief is left to the Court's discretion, and is reviewable only under an abuse of discretion standard.  Lewis v. ACB Business Services, Inc., 135 F.3d 389, 409 (6th Cir. 1998).  Second, in exercising its discretion, the Court must be mindful that the party against whom a summary judgment motion is filed "must receive 'a full opportunity to conduct discovery' to be able to successfully defeat [such a] motion ...."  Ball v. Union Carbide Corp., 385 F.3d 713, 719 (6th Cir. 2004), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  And, finally, any motion filed under Rule 56(d) must address two separate issues: "what material facts [the movant] hopes to uncover [through discovery], and why it has not previously discovered the information."  Cacevic v. City of Hazel Park, 226 F.3d 483, 488 (6th Cir. 2000).  The Court will keep all of these admonitions in mind when it analyzes defendants' motion.

## II.

In order to decide if the pending motion for summary judgment has triggered a need for the defendants to do some discovery, it is important to have a fairly complete understanding of the summary judgment motion itself.  Although the parties' memoranda on the Rule 56(d) motion each characterize the arguments made in the motion in specific ways, and argue that the motion either does, or does not, raise any issues on which discovery might productively be undertaken, the Court will conduct its own independent review of the summary judgment motion, and use the results of that review as the basis of its

analysis here.

This case involves the State of Ohio's decision to lease the coal rights to land underlying the Burr Oak Reservoir to Buckingham Coal Company.  To make a relatively long story shorter, the reservoir was a project undertaken jointly by the State of Ohio and the U.S. Army Corps of Engineers.  Originally, the United States was going to acquire all of the necessary land, including all mineral interests, in fee simple, but, at least according to the motion for partial summary judgment, the State of Ohio expressed some concern about its ability to enforce its criminal laws if the land belonged exclusively to the United States.  Consequently, the two cooperating parties split out the property interests, with Ohio actually obtaining the fee simple title to the property which would be covered by the reservoir, and then granting to the United States a perpetual easement on that property "up to elevation 750.0 above mean sea level ...." The final instruments of conveyance were recorded in 1963.

There are coal seams running underneath the reservoir. Title to these coal seams was acquired by the State of Ohio, either by negotiated purchase or, apparently, from the United States after the United States condemned some of them.  The mineral rights which the State leased to Buckingham in 2010 include rights which Ohio obtained as part of the project to construct the dam and reservoir.  All of these facts appear to be supported by various documents, and none of them would appear to be in serious dispute.

The three legal arguments contained in the summary judgment motion sound a single theme: that it was never the intent of the parties that the State of Ohio would dispose of any of its interest in the project lands except for certain specified purposes - coal mining not being one of them.  The United States contends that the State's decision to lease these mineral rights

so that Buckingham could mine the coal underneath the reservoir is (1) inconsistent with 33 U.S.C. §701h, a provision of the Flood Control Act passed in 1936; (2) inconsistent with a later statute, found at 58 Stat. 887, which specifically authorized the construction and operation of the Burr Oak project; and (3) inconsistent with the 1948 agreement entered into between the Corps of Engineers and the State of Ohio.

Facially, these would all appear to be pure legal arguments. Defendants claim, however, that due to the level of ambiguity in the two statutes and in the agreement (which, they assert, is quite high, at least on the precise issue involved in this case), they need to find out what the Corps' practices have been at other sites which are governed by the same or similar statutes, and they need more information about the negotiation of the agreement. The United States, on the other hand, denies that any such information would be relevant to the interpretation and application of these statutes, or that the burden of producing that information would far outweigh its usefulness. The Court must determine which of these arguments is the more persuasive.

III.

Before turning to the ultimate question of whether defendants ought to be allowed to do some discovery to assist them in opposing the United States' motion for partial summary judgment, it is helpful to point out some matters which are discussed in the parties' memoranda on the Rule 56(d) motion but which are not currently ripe for decision. First, each party has spent a fair amount of time debating the question of whether the United States was under any obligation, until just recently, to respond to discovery requests served at the outset of the case and prior to the parties' Rule 26(f) meeting. There is no question that the discovery requests were served at a time when, absent an agreement or a court order, discovery was not

permitted.  Buckingham, which served those requests, understood that and accompanied them with a motion for leave to conduct early discovery.  The motion was later withdrawn before any order could issue.  According to the United States, the requests were void because they were served prematurely; according to the defendants, once the Rule 26(f) meeting was held, the requests (which had not been withdrawn) sprang to life, and the United States was obligated to respond to them - something it did not do, although it has voluntarily provided a good bit of documentary evidence to the defendants.  This issue is not really pertinent now for several reasons; first, the parties seem to agree that these requests may now be considered to be active, and, second, the question for the moment is not whether these exact requests should be answered in the context of the summary judgment motion, but whether there is any discovery at all which is appropriate and necessary now.

Second, the memoranda contain some debate about whether certain discovery requests are too burdensome, and whether the parties have actually exhausted extrajudicial efforts to reach an agreement on the scope of some of the requests.  Were the current motion a motion to compel discovery, those would be important questions to consider.  However, it is not; it is a Rule 56(d) motion, which is not subject to the requirements in Rule 37(a)(1) concerning extrajudicial efforts to resolve certain discovery disputes prior to motions practice.  In the Court's view, there are important distinctions between these two situations.  The former type of motion usually is made in the context of a case where discovery is permitted and ongoing, and the issue is whether certain specific discovery requests exceed the proper scope of discovery or intrude on an applicable privilege or other protection from discovery.  In that situation, it is incumbent upon the parties to confer about the particular requests at issue

and attempt to find a negotiated resolution before resorting to motion practice.  In the context of a Rule 56(d) motion, however, the nub of the disagreement is whether there should be a delay in the ordinary processing of a summary judgment motion in order to allow some discovery to occur.  An answer to that question - which, typically, no amount of extrajudicial discussion will resolve - must be provided by the Court before the parties can have a discussion about whether individual discovery requests fit within the scope of the discovery which the Court permits the opposing parties to conduct within the time frame set for responding to the motion (assuming, of course, that the Court grants the motion in whole or in part).  Once the Court rules on the conceptual issue of whether the response to the summary judgment motion should await discovery, and once it informs the parties of the issues about which it believes discovery is needed, the parties are then in a position to discuss how well either existing or yet-to-be-served discovery requests relate to those issues, and how to tailor them to avoid placing undue burdens on the responding party.  The Court agrees that before those issues may be submitted for judicial resolution, the extrajudicial efforts required under Rule 37(a)(1) must be exhausted, but any discussion here of the specifics of the defendants' existing or intended discovery requests is, as yet, premature.  The Court will therefore address only the question of whether the way in which the United States has presented its legal arguments has opened the door for some discovery to be done prior to forcing the defendants to prepare and file their responses.

IV.

The two statutory arguments advanced by the United States share some common ground.  Under the Flood Control Act, Ohio and other states which received federal money to build flood control

projects were required to use the "additional storage capacity" created by the project "in a manner consistent with Federal uses and purposes;..." 33 U.S.C. §701h.  Under the later Act which specifically approved the project, and which, according to the United States, incorporated a planning report for the project, it was understood that the reason why the mineral interests underlying the reservoir itself had to be acquired as part of the project was to "prevent mining of the underlying coal ...."  The United States also argues that the mineral interests were acquired using funds jointly contributed by it and the State of Ohio, and to allow Ohio to obtain some economic benefit from leasing those interests is a unilateral and unauthorized change in Ohio's agreed-upon level of financial contribution to the project.  Finally, the United States argues that the State of Ohio was required to seek permission of the Director of the Corps of Engineers before disposing of any interest in the property it acquired as a result of the project, and that it is undisputed that it failed to do so.

    The only part of this group of statutorily-based contentions which would seem to be factually based is the United States' claim that coal mining is not consistent with "federal uses and purposes" for a flood control project.  The source material cited by the United States in support of this argument - and the argument is actually phrased in terms of what types of activities are consistent with federal uses and purposes, thus implying that all other uses are not - include language from the 1948 Agreement which obligates the United States to "operate and maintain the said Project for flood control and water supply purposes," language in that same agreement reserving to the State of Ohio the right to use the water area of the reservoir in any way except for a use which, in the opinion of the District Engineer, is "inconsistent with the flood control and water supply features

of said project," and language in the Definite Project Report which contains a "Purpose" statement describing the purpose of the project as "Flood alleviation in Sunday Creek and other downstream valleys, and water conservation for water-supply and recreational purposes." Summary Judgment Motion, Doc. 47, Exhibits 1 & 2.

One factual issue which leaps out from this argument is whether mining for coal underneath the reservoir is "inconsistent" with the flood control and water supply aspects of the project. Certainly, the defendants may use experts to provide an opinion as to whether the mining has had or may have any impact at all on the use of the reservoir for those purposes, but that would not require discovery, since obtaining such opinions would presumably be a matter which they can control, and those opinions would not necessarily rely on any information which can be obtained only from the United States. But there is also an issue of statutory construction involved - that is, how should the Court construe the phrase "consistent with Federal uses and purposes"? Must a "consistent" use advance such purposes, or is a use "consistent" with those purposes as long as it does not impede them? It is on this issue, defendants argue, that they are entitled to conduct discovery, because only the United States knows how it has interpreted this language in other situations governed by the same statute.

The United States appears to concede the point that if this language is ambiguous - although it argues strenuously that it is not - some discovery as to its practices and interpretation might be relevant, but not the broad and burdensome discovery which defendants have requested. It does appear that an agency's interpretation of ambiguous statutory language, even if that interpretation can be gleaned only from the agency's actions as opposed to written interpretations of various types, can be a

legitimate source for a reviewing court to draw upon.  See, e,g., Christensen v. Harris County, 529 U.S. 576, 589 (2000)(Scalia, J., concurring in part)(noting that the courts may give deference "not only to agency regulations, but to authoritative agency positions set forth in a variety of other formats" including adjudications, letters, decisions, and notices).  Even if such interpretations are not binding because they do not have the force of regulation, the courts may consider them to the extent they have the "power to persuade."  Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944).

  The Magistrate Judge, of course, is not the judicial officer who will ordinarily determine, in the context of an issue-dispositive motion, whether the relevant statutory language is ambiguous.  See 28 U.S.C. §(b)(1)(A).  For discovery purposes, however, all that needs to be determined at this stage, in order to credit defendants' claim that the United States possesses information which can be used as part of a statutory construction argument, is that such information is reasonably calculated to lead to the discovery of relevant evidence.  That is, "[a]t the discovery stage, the Court does not decide whether parol evidence will or will not be admitted ...."  GBTI, Inc. v. Insurance Co. of State of Pa., 2010 WL 2942631 (E.D. Cal. July 23, 2010). Here, the Court finds that there is at least a colorable argument to be made that the key statutory language is ambiguous.  That being so, Judge Graham should have before him, in the context of the summary judgment motion, evidence (if there is such evidence) showing that, on other similar occasions, the United States has not viewed the leasing of mineral interests or mineral extraction as necessarily inconsistent with flood control, water supply, or recreational purposes.

  At the same time, however, the Court is mindful of Rule 26(b)(2)(C)'s admonition that it "must limit the frequency or

extent of discovery otherwise allowed by these rules" if "the burden or expense of the proposed discovery outweighs its likely benefit" considering, among other things, "the importance of the discovery in resolving the issues."  Using the United States' practices at other projects (as opposed to its "authoritative informal statements of policy positions [found in] published interpretive rules or enforcement guidelines") to shed light on the meaning of ambiguous statutory language may well be considered a "last-ditch resort"  See Irving v. United States, 162 F.3d 154, 166 (1st Cir. 1998).  Therefore, such information may be of dubious value.  Additionally, it is typically difficult to find other situations which are sufficiently similar to the one present in the pending case so that probative value can be attributed to any informal policy decision made in that other case.  A case where coal mining was allowed directly under a reservoir constructed for the exact purposes of the Burr Oak Reservoir might be somewhat persuasive; as the type of mineral interests vary, the location of the extraction efforts differ, and the stated purpose of the projects is not identical, the probative value decreases.  Finding the right place to draw the line so that the expected benefit of this discovery at least equals the value of the effort needed to compile it is, in the first instance, committed to the parties, and the Court will give them the chance to find a reasonable compromise.  Because there is at least a possibility that sufficiently similar situations existed, and that the way in which the United States handled them will assist this Court in resolving the issues presented by the motion for partial summary judgment, the Court concludes that defendants should be entitled to explore these matters further through appropriate discovery before being required to respond to the motion.

The discussion has, so far, centered on the United States's

statutory arguments.  Its other argument is that the State of Ohio breached the agreement which the parties signed in 1948. Part of that argument ties into the statutory argument about consistency of purpose, because the agreement does speak to the parties' use of the project lands and water, but there are additional pieces of the argument as well.  The United States contends that the State of Ohio, regardless of whether it proposed a consistent or inconsistent use of the project lands, was required both to acquire title to those lands, which it did, and to retain title to all lands or interest in those lands.  It also argues that the State could not sell or dispose of any lands without prior approval of the District Engineer.  Summary Judgment Motion, Doc. 47, at 31-32.  Again, the United States contends that these provisions of the agreement are unambiguous, and that they clearly prohibit any disposition of any interest in the project lands, including the leasing of mineral interests, either completely, or at least where the consent of the District Engineer has not been given.

The summary judgment motion does not stop there, however. Immediately after making this argument, the United States presents an alternative argument - that, in its words, "[c]ontemporaneous evidence eliminates any doubt that alienation of mineral interests is prohibited." Id. at 36.  The United States then cites to an internal memo which purportedly reflects the Corps' contemporaneous understanding of the agreement, a later report to Congress, and a still later memorandum dealing with the execution of the 1962 deed.  The United States' memorandum in opposition to defendants' Rule 56(d) motion does not specifically address the fact that its summary judgment motion relies on these factual sources as additional evidence bolstering its contractual claim.

Usually, if a party offers parol evidence in support of a

-11-

contract claim, the opposing party is entitled to discovery about the circumstances surrounding the negotiation and execution of the contract. The Court can, of course, require the party seeking discovery in the context of a Rule 56(d) motion to explain why it needs evidence from the opposing party on such issues, see, e.g., United States v. Wallace & Wallace Fuel Oil Co., Inc., 540 F.Supp. 419 (S.D.N.Y. 1982), as opposed to using its own evidence of what occurred, but here the United States relies on evidence from its own records about what its representatives supposedly thought the contract meant. While the State of Ohio (but not, of course, Buckingham, because it was not a party to the negotiations) should have similar records of its own, it would not be likely to have in its possession other memos or documents written by Corps of Engineers representative about this contract.

It may well be that the United States has already produced everything in its possession on this issue. If not, however, this is another area where discovery should be permitted. Again, the Court will allow the parties to explore the extent of available discovery on this issue before delving too deeply into the proper scope of such discovery; it suffices here to say that the defendants should be entitled to take relatively full discovery from the United States about any interpretations or understandings it may have had concerning the key contractual terms given the United States' argument that these interpretations and understandings may be used as evidence of the proper construction of those terms.

V.

The question of timing remains. Given the fact that it appears, from the parties' filings, that defendants have already served discovery requests covering the matters about which they are entitled to discovery, the parties are directed to meet and

confer within twenty-one days of the date of this order in an effort to agree on how much of that discovery should go forward, and how long it will take for the United States to respond. If the parties reach agreement on these issues, they should also attempt to agree on the length of the Rule 56(d) extension. If not, within seven days after they have reached impasse, they shall contact the Court to arrange a conference.

## VI.

For all of these reasons, defendants' motion for an extension of time under Rule 56(d) (Doc. 49) is granted. The parties shall proceed as described in section IV of this Opinion and Order. The date for responding to the pending motion for partial summary judgment will be determined at a later date based on the parties' agreement or a further order of the Court.

## VII.

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge