**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

United States of America,

    Plaintiff,

  v.

Buckingham Coal Co., et al.,

    Defendants.

Case No. 2:11-cv-383

Judge Graham

Magistrate Judge Kemp

**OPINION AND ORDER**

The United States of America brought this action against the State of Ohio and Buckingham Coal Company ("Buckingham") based on a dispute surrounding certain mineral rights beneath a dam and reservoir in Athens County, Ohio. The United States seeks declaratory relief under 28 U.S.C. § 2201, damages from the State, and damages from Buckingham, alleging that it intentionally interfered with contracts between the United States and Ohio. Doc. 42 ¶ 55. In its answer, Buckingham asserted a counterclaim against the United States seeking damages for tortious interference with contract. Doc. 51 at 11.

The United States' motion to dismiss the counterclaim is before the court. Doc. 58. For the reasons stated herein, the motion is denied.

**I. Factual and Procedural History**

The subject of this lawsuit is the coal mineral interests in the land associated with the Tom Jenkins Dam and Burr Oak Reservoir ("the Project"). The Project was constructed by the United States Army Corps of Engineers ("the Corps") pursuant to Act of Congress (Flood Control Act of 1936 – "1936 Act" and Act of December 22, 1944 – "1944 Act") and in

partnership with the State of Ohio. Doc. 42 ¶¶ 1, 2. The United States and Ohio executed an agreement ("Articles of Agreement" or the "Cooperative Agreement") in 1948, which delineates the parties' obligations with respect to the project lands. Doc. 42 ¶ 2. Under the Cooperative Agreement, Ohio obtained the fee simple title to the land that would be covered by the reservoir, including coal mineral interests. Doc. 42 ¶ 2. The Agreement also required Ohio to grant the United States a perpetual flowage easement for "flood control, erosion and water supply purposes." Doc. 42 ¶¶ 2, 18(b) (quoting Cooperative Agreement, Art. I, ¶ 5). The parties acted according to these agreements without incident until February 2010 when the United States learned of a proposal to mine coal under the project lands. Doc. 42 ¶ 25.

Between January and March 2010, Ohio executed two Coal Mining Leases and an Agreement for Exchange of Coal Rights with Buckingham Coal Company ("the Coal Mining and Exchange Agreements"), under which Buckingham obtained the rights to mine coal beneath the surface of the project lands. Doc. 42 ¶ 3; Doc. 51 ¶¶ 7-10. The mineral rights that Ohio leased to Buckingham include rights that Ohio obtained as part of the Project and the Cooperative Agreement with the United States. Doc. 42 ¶¶ 3, 4. The Corps learned of and objected to Buckingham's plans to mine under Project lands. Doc. 42 ¶¶ 26, 27. Pursuant to a Mine Safety and Health Administration-issued permit, Buckingham began mining operations. Doc. 42 ¶ 28; Doc. 51 ¶ 14.

The United States subsequently initiated this action against the State of Ohio and Buckingham Coal Company on May 4, 2011 seeking declaratory relief, preliminary and permanent injunctive relief, and damages. *See* Doc. 1. The United States asserts that Ohio's decision to lease the mineral interests in project lands to Buckingham violates Ohio's obligations under the 1936 Act, the 1944 Act, and the Cooperative Agreement. Doc. 42 ¶ 5. The United

2

States alleges that Buckingham Coal Company intentionally interfered with the contract between Ohio and the United States, causing the United States to incur expenses to inspect, monitor, and remediate damage caused by Buckingham's mining activities (Count III).

On May 6, 2011, the United States filed a motion for a temporary restraining order, seeking to prevent Buckingham from excavating, mining, or otherwise disturbing the ground beneath the Project lands. *See* Doc. 8. This Court denied the motion on May 12, 2011. The Court's order denying the temporary restraining order detailed extensive factual findings following an evidentiary hearing. *See* Doc. 23.

On May 29, 2012, Buckingham asserted a counterclaim against the United States, alleging tortious interference with contract. Doc. 51. Buckingham alleges, among other things, that the United States sought to impede Buckingham's contractual rights under the Coal Mining and Exchange Agreements with Ohio, engaged in repeated efforts to nullify these Agreements, and refused to include Buckingham in discussions regarding these Agreements. Doc. 51 ¶¶ 10-12. Buckingham alleges that it has incurred substantial expense and inconvenience defending its contractual rights, and seeks to recover damages from the United States. Doc. 51 ¶¶ 21, 26, 27.

Before the Court is the United States' motion to dismiss Buckingham's counterclaim for lack of jurisdiction, or in the alternative, for failure to state a claim. Doc. 58.

**II. Standards of Review**

    a. Rule 12(b)(1)

The plaintiff has the burden of demonstrating the court's jurisdiction where subject-matter jurisdiction is challenged pursuant to a Rule 12(b)(1) motion. *Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990); *Official Pillowtex LLC v. Hollander Home Fashions Corp.*, 479 F. Supp. 2d 744, 752 (S.D. Ohio 2007).

The framework under which the court reviews a Rule 12(b)(1) motion depends on the nature of the challenge to the court's subject-matter jurisdiction. *Ohio National Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wojton v. United States*, 199 F. Supp. 2d 722, 725 (S.D. Ohio 2004). Rule 12(b)(1) motions generally come in two varieties: facial attacks and factual attacks. *Ohio National Life Ins. Co.*, 922 F.2d at 325. As the Sixth Circuit has explained, "a facial attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading." *Id.* A district court must take the allegations in the complaint as true when reviewing a facial attack. *Id.* On the other hand, a factual attack on the court's jurisdiction presents a factual controversy, and the district court must weigh the conflicting evidence to resolve the disputed jurisdictional facts. *Id.* When the district court reviews a factual attack, "no presumptive truthfulness applies to the factual allegations." *Id.* Instead, the court has wide discretion to consider "affidavits, documents and even a limited evidentiary hearing" to determine whether subject-matter jurisdiction exists. *Id.*

The United States' motion to dismiss for lack of subject-matter jurisdiction presents a facial attack. The United States attacks the sufficiency of Buckingham's pleadings, arguing that the counterclaim fails to state a proper claim for recoupment.

b.  Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court should

construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *Iqbal*, 556 U.S. at 679; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Twombly*, 550 U.S. at 555-56.

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s]" devoid of "further factual enhancements"); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

When the complaint does contain well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Though "[s]pecific facts are not necessary," *Erickson*, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," *Twombly*, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal

5

evidence to support the claim. *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-56. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**III. Law & Analysis**

    a.  <u>Subject-Matter Jurisdiction</u>

Generally, federal courts may exercise subject-matter jurisdiction over a claim against the United States only if the United States has consented to suit and waived its sovereign immunity. *United States v. Navajo Nation*, 537 U.S. 488, 502 (2003); *Premo v. United States*, 599 F.3d 540, 544 (6th Cir. 2010). Normally, plaintiffs asserting tort claims against the United States rely on the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680, which "waives sovereign immunity for certain actions in tort by giving district courts exclusive jurisdiction over those types of civil actions." *Premo*, 599 F.3d at 544.

In its motion to dismiss, the United States argues that Buckingham's counterclaim does not fall within the Federal Tort Claims Act's waiver. Doc. 58-1 at 4. Indeed, the FTCA expressly excludes Buckingham's claim for interference with contract rights. Doc. 58-1 at 5. *See* 28 U.S.C. § 2680(h) ("The provisions of [the FTC] . . . shall not apply to . . . any claim arising out of . . . interference with contract rights . . . .").

Buckingham does not assert that its counterclaim falls within the waiver of sovereign immunity authorized by the FTCA. Instead, Buckingham contends that the United States' action constitutes a limited waiver of sovereign immunity under the doctrine of recoupment. Doc. 59 at

1. The doctrine of recoupment creates a narrow exception to the general rule that the United States may not be sued absent statutory consent. *See United States v. United States Fidelity & Guaranty Co.,* 309 U.S. 506, 511 (1940). "Despite sovereign immunity, 'a defendant may, without statutory authority, recoup on a counterclaim an amount equal to the principal claim.'" *United States v. Forma*, 42 F.3d 759, 764 (2d Cir. 1994) (quoting *United States Fidelity & Guaranty Co.*, 309 U.S. at 511). In other words, once the United States has instituted suit, a defendant may assert a counterclaim against the United States, only to the extent that the counterclaim seeks to reduce an award to which the United Sates may be entitled, and does not seek separate, affirmative relief.

Although the United States Supreme Court has embraced the concept of recoupment, it has not expressly defined the elements of a proper counterclaim for recoupment against the United States. *See United States Fidelity & Guaranty Co.*, 309 U.S. at 511 ("[A] defendant may, without statutory authority, recoup on a counterclaim [against the government] an amount equal to the principal claim."); *Bull v. United States,* 295 U.S. 247, 261–262 (1935) ("[R]ecoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded.") The Sixth Circuit Court of Appeals has not addressed this doctrine in a published opinion. However, in *United States v. Neyland*, No. 97-3044, 1998 WL 381364, at *7 (6th Cir. June 25, 1998), a panel of the Sixth Circuit approvingly cited the leading authority—a Fifth Circuit case—setting forth the relationship between sovereign immunity and recoupment. The panel applied the doctrine, but ultimately granted summary judgment due to insufficient factual support. *Id.* at *7-*8.

In *Frederick v. United States*, 386 F.2d 481 (5th Cir. 1967), the Fifth Circuit explained how recoupment functions in detail:

7

> When the sovereign sues it waives immunity as to claims of the defendant which assert maters in recoupment[] arising out of the same transaction or occurrence which is the subject matter of the government's suit, and to the extent of defeating the government's claim but not to the extent of a judgment against the government which is affirmative in the sense of involving relief different in kind or nature to that sought by the government or in the sense of exceeding the amount of the government's claims.

*Id.* at 488.  Though the Sixth Circuit has not yet addressed or adopted the doctrine of recoupment in a published case, the United States Supreme Court and all circuit courts that have considered the issue have recognized recoupment as an "exception" to sovereign immunity.  *See, e.g.*, *Federal Sav. & Loan Ins. Corp. v. Quinn*, 419 F.2d 1014, 1017–18 (7th Cir. 1969) ("Federal waived its immunity to . . . the Counterclaim . . . by the filing of its complaint, because [the Counterclaim] merely sets up a matter in recoupment arising out of the same transaction that was the subject matter of the suit . . . to diminish the amount of Federal's claim.") (citing *Frederick*, 386 F.2d at 488)); *Rosebud Sioux Tribe v. Val-U Construction Co. of South Dakota, Inc.*, 50 F.3d 560, 562 (8th Cir. 1995) ("Recoupment is a defensive action that operates to diminish the plaintiff's recovery rather than to assert affirmative relief."); *see also, e.g.*, *Livera v. First National State Bank of New Jersey*, 879 F.2d 1186, 1196 (3rd Cir. 1989); *Equal Employment Opportunity Commission v. First National Bank of Jackson*, 614 F.2d 1004, 1008 (5th Cir. 1980) *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1345 (10th Cir. 1982); *U.S. v. Timmons*, 672 F.2d 1373, 1379–80 (11th Cir. 1982).

To assert a claim against the United States in recoupment, a party's counterclaim must: (1) arise out of the same transaction or occurrence, (2) seek relief of the same form or nature as that of the original claim, and (3) seek relief not in excess of that which the sovereign seeks.  *Frederick,* 386 F.2d at 488; *see also Neyland*, 1998 WL 381364, at *7.  The purpose of a counterclaim for recoupment is to "reduce or defeat the government's recovery." *Neyland*, 1998

WL 381364, at *8 (internal quotations omitted) (citing *Rosebud Sioux Tribe v. Val-U Const. Co. of S. Dakota, Inc.*, 50 F.3d 560, 562 (8th Cir. 1995), *cert. denied*, 516 U.S. 819 (1995)).

### i. Same Transaction or Occurrence

A recoupment claim must arise out of the same transaction or occurrence that is the subject of the original claim. *F.D.I.C. v. Hulsey*, 22 F.3d 1472, 1487 (10th Cir. 1994); *Frederick*, 386 F.2d at 488 ("[W]hen the sovereign sues it waives immunity as to claims of the defendant which assert maters in recoupment-arising out of the same transaction or occurrence which is the subject matter of the government's suit . . . ."). Though very few binding cases have examined recoupment, the test of whether one claim arises out of the same transaction or occurrence as another has been extensively developed in the context of compulsory counterclaims, which also arise out of the same transaction or occurrence as the original claim. *See* Fed. R. Civ. Pro. 13(a); *see also Hulsey*, 22 F.3d at 1487; *Sanders v. First Nat. Bank & Trust Co. in Great Bend*, 936 F.2d 273, 277 (6th Cir. 1991). Under this test, the court examines "whether the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or refute both claims." *Id.* (citing *Moore v. New York Cotton Exchange*, 270 U.S. 593 (1926)); s*ee also Quinn v. Griffith,* No. 11-1672, 2013 WL 628419, at *3 (6th Cir. Feb. 21, 2013) (applying the "logical relationship" test).

A "transaction" may be comprised of many occurrences, "depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610 (1926). It may be "one of the links in the chain which constitutes the transaction upon which [a party] bases its cause of action . . . . It [may be] the one circumstance without which neither party would have found it necessary to seek relief." *Id.* That the essential facts are not "precisely identical," or that the "counterclaim embraces additional

9

allegations" is irrelevant. *Id; see also In re Gordon Sel-Way, Inc.,* 270 F.3d 280, 287 (6th Cir. 2001) (considering the "same transaction and occurrence test," the court held that the parties' claims were logically related, despite the fact that the claims did not arise at the same moment).

On the other hand, a claim does not arise out of the same "transaction or occurrence" if it arises from a party's breach of an independent contract or if it stems from an independent wrong unconnected with the plaintiff's original claims. *Equal Employment Opportunity Comm'n v. First Nat. Bank of Jackson*, 614 F.2d 1004, 1008 (5th Cir. 1980) ("*Jackson*").  In *Jackson*, the Equal Employment Opportunity Commission ("EEOC") brought suit under Title VII against the National City Bank of Jackson for racial discrimination.  The Bank counterclaimed, asserting that the "purpose of the EEOC's lawsuit was to 'defraud, vex, and harass' the bank and other employers 'maliciously and for ulterior purposes' by means of 'unlawfully conceived, groundless, vexatious, and fraudulent charges.'"  *Id.* at 1007.  The Fifth Circuit held that the Bank's counterclaim was not a claim in recoupment because "although the bank's counterclaim has some connection to the EEOC's suit," the connection was "too tenuous and indirect to warrant the innovation of the doctrine of recoupment." *Id.* at 1008.

In this case, Buckingham argues that the transactions and occurrences that are the subject matter of its counterclaim are the same as those that are the focus of the United States' amended complaint.  Doc. 59 at 5.  Buckingham asserts that the United States' amended complaint seeks to terminate the coal mining leases entered into between Buckingham and Ohio and other transfers of property interests from Ohio to Buckingham.  *Id.* (citing Am. Complaint, doc. 42 ¶¶ 23, 26; Prayer for Relief, doc. 42 ¶¶ 2, 3).  Buckingham argues that these same lease agreements are the subject of its claims against the United States, and arise from the same transaction or occurrence.

10

According to the United States, its claims have nothing to do with Buckingham's contracts with Ohio. Doc. 60 at 3. Instead, its claims focus only on Buckingham's interference with the contracts between the United States and Ohio, and Buckingham's alleged attempts to induce Ohio to breach its contract with the United States. Doc. 60 at 3. The United States argues that Buckingham's counterclaim, on the other hand, focuses on the United States' litigation of this case and the effect of that litigation on an "independent contract" that Buckingham entered into with Ohio. Doc. 60 at 4-5. These arguments ignore the fact that Ohio's lease of mining rights to Buckingham and Buckingham's mining of project lands are central to both the United States' and Buckingham's claims. The United States' allegations against Buckingham focus on the company's leasing of mineral rights and mining of Project lands underlying the United States' flowage easement. Doc. 42 ¶¶ 52, 53. Buckingham's counterclaim, too, focuses on these actions, and claims that the United States has sought to impede the rightful execution of the contract between Buckingham and the state of Ohio.

The United States claims "there can be no claim for equitable recoupment where the counterclaim arises 'from the breach of independent contract or from an independent wrong unconnected with the plaintiff's cause of action.'" (Doc. 60 at 4) (citing *Jackson*, 614 F.2d at 1006). However, Buckingham's counterclaim does not arise from a breach of an independent contract, nor does it stem from an unconnected, independent wrong. Buckingham's contracts with Ohio are "independent" from the United States' contracts with Ohio in the sense that they are not contracts among the same parties, but the dispute at the heart of Buckingham's claims is the right to mine beneath project lands and the act of mining—the very same transaction and occurrence as raised by the United States.

11

The United States also categorizes Buckingham's allegations in its counterclaim as "malicious prosecution-type allegations." However, Buckingham's counterclaim goes beyond merely alleging that it has been harmed by the United States' litigation of this case. Although Buckingham alleges that the United States' actions in filing this suit were wrongful and have caused Buckingham to incur substantial expense, the thrust of Buckingham's counterclaim focuses on the United States' inference with Buckingham's contractual rights. The mere fact "that the counterclaim embraces additional allegations . . . does not matter." *Moore*, 270 U.S. at 610. Buckingham's counterclaim arises out of the same transaction or occurrence as claims of the United States.

### ii. Relief of the Same Kind or Nature

Next, the court must determine if the counterclaim seeks relief different in kind from that sought by the United States in its original claim. *See Neyland*, 1998 WL 381364, at *8. This element involves two inquiries: first, the counterclaim must seek relief of the same type or nature, and second, the counterclaim must seek only to reduce or defeat the government's claim. *See Id.; Quinn*, 419 F.2d at 1017–18.

First, the relief sought must be of the same type or nature. Thus, "if the plaintiff is seeking monetary relief, the defendant's counterclaims must also seek monetary relief to qualify as claims in recoupment." *Hulsey,* 22 F.3d at 1487. The United States and Buckingham each seek monetary damages from the other. Doc. 42 ¶ 5; doc. 51 ¶ 27. Thus, the counterclaim seeks relief of the same type or nature as that which the United States seeks.

Second, a counterclaim must seek relief that operates to diminish the government's recovery, rather than to claim affirmative relief. *Id.; Quinn*, 419 F.2d at 1017–18. In *Neyland*, the United States alleged that the defendant was overpaid in retirement benefits as a result of his

failure to properly report his outside employment on a retirement application. *Neyland*, 1998 WL 381364, at *2. The defendant counterclaimed, alleging that the Government improperly "reduced his monthly [] retirement benefits to recover the alleged overpayment." *Id.* The defendant's counterclaim sought approximately $15,000 in restitution for improper reduction of benefits. *Id.* at *8. The court stated that in seeking restitution this claim appeared to seek affirmative relief, rather than a reduction of the government's claim. *Id.* The court continued: "Nevertheless, read generously, because the basis of the counterclaims is that the government has improperly reduced the monthly benefits in order to recover the overpayment, we could hold that these counterclaims are seeking to reduce the government's overpayment claim." *Id.* The court ultimately determined that the counterclaim failed on summary judgment because the facts were insufficient to support the claim. *Id.* Likewise, in proceeding with its counterclaims, Buckingham may only seek to reduce an award of damages against it. Should the United States' claims against Buckingham fail, Buckingham's recoupment claim will become moot.

### iii. An Amount Not in Excess of Plaintiff's Original Claim

Finally, because Buckingham's counterclaim may only reduce any award received by the United States, the claim for recoupment may not seek relief in excess of that which the United States seeks. *See Frederick,* 386 F.2d at 488. Buckingham seeks only to "recoup its damages from such tortious interference in an amount not in excess of the relief sought by the United States." Doc. 51 ¶ 17. Thus, the counterclaim does not seek relief in excess of that which the original complaint seeks.

### b. Failure to State a Claim Upon Which Relief May Be Granted

The United States presents two arguments that Buckingham's allegations fail to state a claim for tortious interference with contract. First, the United States argues that tortious

13

interference requires actual breach of the contract at issue, and Buckingham has not alleged that its contract with the State of Ohio has been breached. Doc. 58-1 at 16-17. The United States cites a single case, *Fred Sigel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853 (Ohio 1999), to support the assertion that breach is an element of a tortious interference with contract claim. However, Buckingham correctly points out that *Siegel* involved a defendant seeking to interfere with a contract between the plaintiff and a third party by convincing the third party to breach the contract. Doc. 59 at 14. Here, however, Buckingham alleges that the United States interfered with its contract with the State of Ohio by making it more difficult for Buckingham to perform its contractual duties. Doc. 59 at 15. *Compare* Restatement (Second) of Torts § 766A (1979) (tort liability for making it more difficult for plaintiff to perform a contract) *with* Restatement (Second) of Torts § 766 (1979) (liability for procuring the breach of a contract by a third party). Ohio Courts have held that a plaintiff may proceed under a theory that the defendant sought to make its performance of the contract more difficult, even in the absence of breach of the contract. *See, e.g., Eagle Creek Partnership v. Vasu*, No. 97CA006674, 1997 WL 775780 at *3 (Ohio App. Nov. 26, 1997); *see also McDonnell v. Cardiothoracic & Vascular Surgical Associates, Inc.*, No. C2-03-0079, 2004 WL 3733403 at *9 (S.D. Ohio July 30, 2004); *Kenneth J. Majcen Assocs. V. Phoenix Assocs., Inc.*, No. 76454, 2001 WL 60038 at *5 (Ohio App. Jan 18, 2001). Here, Buckingham has alleged, *inter alia*, that "the United States misrepresented to the federal Mine Safety and Health Administration ("MHSA") that the State of Ohio had rescinded its mining permits to Buckingham. On December 21, 2010, in reliance on that misrepresentation, MSHA rescinded the permit that it had issued to Buckingham for construction of the mine entries." Doc. 51 ¶ 13. Buckingham's allegations are sufficient to support its claim for tortious interference with contract.

14

The United States second argument is that it was privileged to interfere with the contract between Buckingham and the State of Ohio because it was entitled to protect its own legal interests. Buckingham's alleges, however, that the United States had no such interest. Doc. 51 ¶ 4. Central to this dispute is the question of whether the contract between Ohio and Buckingham properly granted mining rights to Buckingham, or if the contract infringed on the United States' rights under its contract with the state. At this stage of the litigation, Buckingham's allegations are sufficient to defeat any claim of privilege asserted by the United States.

**III. Conclusion**

For the reasons stated above, the United States' motion to dismiss Buckingham's counterclaim (doc. 58) is DENIED.

IT IS SO ORDERED.

         _S/_ James L. Graham
         JAMES L. GRAHAM
         United States District Judge

**DATE:** April 29, 2013